Vinod C. **BHAN**, C.R.N.A.,
Plaintiff-Appellant,

v.

**NME HOSPITALS, INC.**, a Delaware corporation, dba Manteca Hospital, et al., Defendants-Appellees.

No. 84–2256.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 1985.

Decided Oct. 2, 1985.

---

Timothy E. Morgan, San Francisco, Cal., H.E. Christian Peeples, Oakland, Cal., for plaintiff-appellant.

John K. Van de Kamp, Atty. Gen., Andrea Sheridan Ordin, Asst. Atty. Gen., Sanford R. Gruskin, Owen Lee Kwong, Dist. Attys. Gen., Michael R. Granen, Los Angeles, Cal., for amicus State of Cal.

Jeffrey Klurfeld, Asst. Reg. Dir., Erika Wodinsky, Gerald E. Wright, June S. Katz, Attys., F.T.C., San Francisco, Cal., for amicus F.T.C.

---

Roger M. Schrimp, Stockton & Schrimp, Modesto, Cal., William P. Torngren, Bolling, Walter & Gawthrop, Sacramento, Cal., Michael C. Normoyle and Teresa Vig Rein, Damrell, Damrell & Nelson, Modesto, Cal., for defendants-appellees.

Before MERRILL and GOODWIN, Circuit Judges, and WILLIAMS,* Senior District Judge.

MERRILL, Circuit Judge:

Vinod C. Bhan, a nurse anesthetist, appeals from the dismissal of his antitrust suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Bhan argues that the district court erred in concluding that he lacked standing to sue under the antitrust laws. He disputes the ruling upon which the district court based its decision, that, as a matter of law accepting the allegations of Bhan's complaint as true, nurse anesthetists and M.D. anesthesiologists do not compete since they do not function in the same market.

I

Bhan is a certified registered nurse anesthetist,[1] who, until April 1983, performed the bulk of his practice at Manteca Hospital in Manteca, California, pursuant to the hospital's contract with Associated Anesthesia Services. That contract expired on March 31, 1983, at which time the hospital allegedly adopted a policy of allowing only M.D. anesthesiologists to perform anesthesia services in the hospital's operating rooms. Consequently, appellant claims that he was precluded from practicing his profession at Manteca Hospital.

Bhan filed his complaint on March 28, 1983. He alleged that the hospital's policy

---

* Honorable David W. Williams, Senior United States District Judge, Central District of California, sitting by designation.

1. A nurse anesthetist is a registered nurse, licensed by the state board of registered nursing, who has met standards for certification to practice nurse anesthesia set forth by the board. Cal.Bus. & Prof.Code §§ 2826(b), 2830 (West. Supp.1985). An M.D. anesthesiologist is a physician who devotes the major part of his practice to the field of anesthesia.

violates the federal antitrust laws. He also adduced several state law claims.

Bhan's federal claims are predicated upon Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1985). He alleges that the defendants conspired and combined to eliminate competition in the provision of anesthesia services at the hospital; that they monopolized, attempted to monopolize and conspired to monopolize the provision of those services, and that they formed and maintained a pool of economic and professional power and resources to eliminate competition and exclude nurse anesthetists from the market for anesthesia services at the hospital. In doing so, the defendants allegedly acted with the intent to eliminate competition in the provision of anesthesia services and with the purpose of foreclosing nurse anesthetists from competition; the anticipated result was that monopoly control would be solidified and the costs of anesthesia services would increase. Bhan further contends that as a direct and proximate result of the defendant's conspiracy he has been foreclosed from the market for anesthesia services at Manteca Hospital and the practice of his profession in the Manteca area has been destroyed. He claims that services performed at Manteca Hospital accounted for at least eighty percent of his practice.

Bhan alleges the following acts in support of his claims: In January 1983, defendant Menaugh, the hospital administrator, entered into negotiations with defendant Yong Suk, M.D., to induce Suk to relocate from Michigan to Manteca and to perform anesthesia services at the hospital. Menaugh offered Suk either an exclusive contract with the hospital or the right to determine what services would be provided and by whom. The anticipated arrangement caused concern to Michael Cull, M.D., who was the M.D. anesthesiologist then working at the hospital. Cull contacted either the California Society of Anesthesiologists or the California League of Anesthesiologists to voice his opinion that the hiring of Suk would result in loss of income

either to himself or to Bhan or would result in the revocation of his anesthesia privileges. The anesthesiologists' organizations and Suk combined to induce Menaugh to recommend that the hospital board adopt the anesthesiologist-only policy and exclude nurse anesthetists from anesthesia practice. They were allegedly motivated by the fact that nurse anesthetists typically perform anesthesia services at a lower cost and with greater scheduling flexibility than M.D. anesthesiologists, making their services more attractive to consumers.

The defendants moved under Fed.R. Civ.P. 12(b)(6) to dismiss the complaint on the ground that Bhan had not suffered an injury the antitrust laws are designed to prevent because he does not compete with M.D. anesthesiologists. The district court agreed that California law precluded such competition and, therefore, dismissed Bhan's claim for lack of standing to sue under the antitrust laws. Having dismissed Bhan's federal claim, the district court also dismissed his pendent state claims without prejudice.

II

The issue here presented is whether Bhan was a proper party to bring an antitrust action against the defendants. Section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1985), provides:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

As the Supreme Court has observed, "[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 907 n. 31, 74 L.Ed.2d 723 (1983).[2]

2. The district court, rather than describing its     inquiry as a question of whether the plaintiff is

In making this determination, "the infinite variety of claims that may arise make it virtually impossible to announce a black letter rule that will dictate the result in every case." *Associated General Contractors*, 459 U.S. at 536, 103 S.Ct. at 908. Instead, "previously decided cases identify factors that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances." *Id.* at 537, 103 S.Ct. at 908.

In evaluating Bhan's complaint, the only *Associated General Contractors* factor which is at issue is the requirement that the alleged injury be of "the type that the antitrust statute was intended to forestall." *Associated General Contractors*, 459 U.S. at 540, 103 S.Ct. at 910. *See Blue Shield of Virginia v. McCready*, 457 U.S. 465, 478, 481–84, 102 S.Ct. 2540, 2547, 2549–51, 73 L.Ed.2d 149 (1982).[3] As the Supreme Court has stated, "[t]he antitrust laws ... were enacted for the protection of competition, not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), *quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). *See Associated General Contractors*, 459 U.S. at 538–40, 103 S.Ct. at 908–09; *McCready*, 457 U.S. at 482, 102 S.Ct. at 2550.

The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors. *See Associated General Contractors*, 459 U.S. at 538, 539, 103 S.Ct. at 908, 909; *Ostrofe v. H.S. Crocker*, 740 F.2d 739, 744 (9th Cir.1984), *cert. dismissed*, — U.S. —, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985); *Haff v. Jewelmont Corp.*, 594 F.Supp. 1468, 1477 (N.D. Cal.1984). Thus, the crux of the matter before the court is whether nurses and physicians are participants in a single anesthesia services market or whether they each participate in their own markets.[4]

In analyzing whether nurse anesthetists and M.D. anesthesiologists partic-

---

a proper party to bring an antitrust action, phrased its inquiry as an issue of antitrust "standing." What courts have referred to as antitrust standing is, however, subsumed within the inquiry into whether a plaintiff is a proper party to bring an antitrust action. *Associated General Contractors*, 459 U.S. at 535 n. 31, 103 S.Ct. at 907 n. 31. *See also Blue Shield of Virginia v. McCready*, 457 U.S. 465, 476, 102 S.Ct. 2540, 2546, 73 L.Ed.2d 149 (1982); *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 448–49 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985).

Further, the Supreme Court has stated that in determining whether a party injured by an antitrust violation may recover treble damages, courts should apply the factors set forth in *Associated General Contractors* rather than making inquiries under such labels as the "zone of interests" or the "target area" test. 459 U.S. at 536 n. 33, 103 S.Ct. at 907 n. 33; *Bubar*, 752 F.2d at 449; *Haff v. Jewelmont Corp.*, 594 F.Supp. 1468, 1473 & n. 3 (N.D.Cal.1984). *See Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1295 (9th Cir. 1984), *cert. denied*, — U.S. —, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985); *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 740–41 (9th Cir.1984), *cert. dismissed*, — U.S. —, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985); *Chelson v. Oregonian Publishing Co.*, 715 F.2d 1368, 1370 (9th Cir.1983).

**3.** Although the Supreme Court did not explicitly state that a plaintiff must satisfy all of the *Associated General Contractors* factors or, indeed, any particular factor, the inquiry whether the plaintiff has suffered an injury of the type which the antitrust statute was intended to forestall is a factor of tremendous significance. Not only is the primacy of this requirement "suggested by the manner in which these factors were discussed in *Associated General*, but it is also suggested by the Court's reasoning in *Brunswick* and *McCready*." *Haff*, 594 F.Supp. at 1476 n. 6.

**4.** The State of California, as amicus curiae, puts great weight upon the holding in *Ostrofe* which allowed a plaintiff to bring suit who was neither a competitor nor a consumer, but was nevertheless a directly injured participant in the relevant market. 740 F.2d at 744–45. In this case, however, the issue in dispute is not whether Bhan is the *type* of participant in the relevant market who may maintain an antitrust action, but whether he is a participant in the relevant market *at all*. Indeed, if the relevant market was found to encompass the services provided both by nurse anesthetists and M.D. anesthesiologists, then Bhan would, as an alternate provider of services and, therefore, a competitor, certainly qualify as the type of participant protected by the antitrust laws. This fact does not, however, obviate the need for determining whether nurse anesthetists and M.D. anesthesiologists participate in the same market.

ipate in the same market, the focus is upon the reasonable interchangeability of use or the cross-elasticity of demand between the services provided by nurse anesthetists and by M.D. anesthesiologists. *See Brown Shoe,* 370 U.S. at 325, 82 S.Ct. at 1523; *Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 512 F.2d 1264, 1271 (9th Cir.1975), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982).

The district court concluded that Bhan could not possibly assert facts which would enable him to establish that he participated in the same market as M.D. anesthesiologists. The court reasoned that the legal restrictions upon nurse anesthetists precluded any reasonable interchangeability of use.[5]

■ Under California law, in administering anesthesia a nurse must act at the direction of, and under the supervision of, *inter alia,* a physician. *See Magit v. Board of Medical Examiners,* 57 Cal.2d 74, 83, 17 Cal.Rptr. 488, 491, 366 P.2d 816, 819 (1961); *Chalmers-Francis v. Nelson,* 6 Cal.2d 402, 404–05, 57 P.2d 1312, 1313 (1936); Cal.Bus. & Prof.Code § 2725 (West 1974); 22 Cal.Admin.Code §§ 51326(a)(1), 70235(a); 64 Ops.Cal.Att'y.Gen. 240, 250 (1981).

The requirement of medical supervision does not, however, end the court's inquiry. A nurse anesthetist administering anesthesia under the supervision of a physician may still duplicate many of the services provided by an M.D. anesthesiologist. Further, the supervising physician is not required to be an M.D. anesthesiologist, but might be any attending physician, dentist or podiatrist. *See, e.g.,* 67 Ops.Cal.Atty. Gen. 122 (1984).

In defining product markets, courts have recognized that a product should not be excluded from a market because it requires an additional input in order to be a reasonable substitute for other products in the market. *See Calnetics Corp. v. Volkswagen of America, Inc.,* 532 F.2d 674, 691 (9th Cir.), *cert. denied,* 429 U.S. 940, 97

S.Ct. 355, 50 L.Ed.2d 309 (1976); *Telex Corp. v. International Business Machines,* 510 F.2d 894, 914–19 (10th Cir.), *cert. dismissed,* 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975).

The position of the nurse anesthetist is analogous to that of the competitors in *Telex* and *Calnetics.* What differs is only the nature of the input needed. The input required by a nurse anesthetist to match exactly many of the services of an M.D. anesthesiologist is the supervision of an attending physician. Appellant has alleged that such supervision is not only obtainable but is actually a common practice in the medical profession.

No doubt, the legal restrictions upon nurse anesthetists create a functional distinction between nurses and M.D. anesthesiologists. They do not, however, necessarily preclude the existence of a reasonable interchangeability of use or cross-elasticity of demand sufficient to constrain the market power of M.D. anesthesiologists and thereby to affect competition. As a matter of law, Bhan's allegations are sufficient to establish that he is a proper party to bring this antitrust action. Whether Bhan will be able to introduce evidence in support of his allegations or whether any restrictive arrangements actually proved might survive under the rule of reason are matters which are not before the court.

The decision of the district court is reversed and the case remanded for further proceedings.

---

**5.** The validity of the legal restrictions upon nurse anesthetists is not being challenged by the appellant.