788 F.2d 574
 54 USLW 2610, 1986-1 Trade Cases 67,067
 EXHIBITORS' SERVICE, INC., Plaintiff/Appellee,
v.
AMERICAN MULTI-CINEMA, INC., and AMC Film Marketing, Inc.,
formerly known as AMC Film Management, Inc.,
Missouri Corporations, Defendants/Appellants,
American Multi-Cinema, Inc., AMC Film Management, Inc., AMC
Film Marketing, Inc., AMC Film Exhibition, Inc.,
and Durwood, Inc., Defendants.
EXHIBITORS' SERVICE, INC., Plaintiff/Appellant,
v.
AMERICAN MULTI-CINEMA, INC., and AMC Field Marketing, Inc.,
Defendants/Appellees.
 Nos. 84-5530, 84-5704.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 5, 1985.
Decided April 25, 1986.
 
 Maxwell Blecher, Blecher, Collins, & Weinstein, Los Angeles, Cal., for plaintiff/appellee.
 Robert C. Hackett, Mohr, Hackett, Pederson, & Blakeley, P.C., Phoenix, Ariz., for defendants/appellants.
 Appeal from the United States District Court for the Central District of California.
 Before CANBY, BEEZER and HALL, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 In this case, the controlling issue is whether plaintiff is the proper party,[1] under Section Four of the Clayton Act, 15 U.S.C. Sec. 15 (1982), to bring this antitrust action for treble damages under Section One of the Sherman Antitrust Act, 15 U.S.C. Sec. 1 (1982). Defendants American Multi-Cinema, Inc. (AMC), and its subsidiary AMC Film Marketing, Inc. (Film Marketing) appeal from a jury verdict and judgment in favor of plaintiff Exhibitors' Service, Inc. (ESI). The district court denied defendants' pretrial motion to dismiss ESI's antitrust claim for lack of standing. On appeal, AMC contests this ruling. We have jurisdiction under 28 U.S.C. Sec. 1291, and we reverse.
 
 BACKGROUND
 
 2
 This case arises out of a dispute involving the licensing, distribution and exhibition of feature motion pictures. The motion picture industry is divided into at least three groups engaged in separate and distinct businesses: (1) motion picture distributors, (2) motion picture exhibitors and (3) licensing agents. Distributors, who own the copyrights for films they produce, license the pictures for exhibition in theaters operated by exhibitors. Licensing agents represent exhibitors in negotiations with distributors to acquire these licenses.
 
 
 3
 ESI, a California corporation, acts as a licensing agent for independent motion picture exhibitors in the southwestern United States. From 1973 through December 1980, ESI was the licensing agent for Blair and Reid, Inc. (B & R), a motion picture exhibitor operating eight screens in the MetroCenter Shopping Center in Phoenix, Arizona. The agreement between ESI and B & R was terminable at will by either party.
 
 
 4
 AMC, a Missouri corporation, is a motion picture exhibitor operating 725 theaters in 26 states, including six screens in MetroCenter. Its subsidiary Film Marketing, like ESI, is a licensing agent.
 
 
 5
 ESI alleged, and the jury apparently found, that following AMC's move into MetroCenter, intense and costly competition for films resulted between AMC and B & R. Essentially AMC and B & R became engaged in a bidding war for rights from distributors to first-run films for their respective MetroCenter screens. In order to reduce or eliminate the competition between them, AMC and B & R entered into a so-called "splitting" arrangement under which the two firms equitably allocated films between themselves. The result was to lower the cost of films for both exhibitors. As part of this AMC-B & R agreement, B & R exercised its right under its contract with ESI to terminate ESI as its licensing agent. Both B & R and AMC now employ Film Marketing as their exclusive licensing agent.
 
 
 6
 ESI filed this action in district court, claiming that the AMC-B & R arrangement was an improper restraint of trade in violation of Section One of the Sherman Act. It requested both injunctive relief and treble damages.[2] Before trial, AMC filed a motion for partial summary judgment on the antitrust count, contending that plaintiffs lacked standing to bring the lawsuit. The district court, relying on the U.S. Supreme Court decisions in Associated General Contractors of California, Inc., v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), and Blue Shield of Virginia v. McCready, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), denied the motion. The court held that the facts alleged by ESI were sufficient to show: (1) that ESI was a competitor within the area of the economy that would be endangered by a breakdown in competitive conditions; (2) that damage to ESI was the direct and foreseeable result of a price fix; (3) that plaintiff's injury was an integral aspect of the bid-rigging conspiracy; and (4) that plaintiff's alleged injury was "inextricably intertwined" with the injury suffered by distributors and other exhibitors as a result of the alleged illegal activity between AMC and B & R. The court later denied AMC's request to certify an interlocutory appeal on the standing issue.
 
 
 7
 All parties agreed that the AMC-B & R agreement was a restraint of trade with its primary effect on film distributors because the agreement was to reduce competition between AMC and B & R for rights to certain films. Geographically, the restraint involved the relatively narrow market of motion picture theaters in and around MetroCenter in Phoenix.
 
 
 8
 Testimony at trial revealed that ESI had no inherent objection to the AMC-B & R arrangement. Rather, it objected to that aspect of the agreement which required termination of ESI as B & R's licensing agent. As the parties agreed, nothing in the "split" arrangement necessarily required ESI's termination; however, some testimony at trial indicated that replacement of ESI with Film Marketing was an integral part of the AMC-B & R agreement.
 
 
 9
 The jury returned a verdict in favor of ESI on its Section One claim and awarded it $70,408 in damages before trebling. The district court later awarded ESI $105,612 in attorneys' fees and $7,160.83 in costs. See Exhibitors' Service, Inc. v. American Multi-Cinema, Inc., 583 F.Supp. 1186 (C.D.Cal.1984). AMC's motion for a judgment notwithstanding the verdict was denied, and this appeal followed. ESI cross-appeals from the award of attorneys' fees.[3]
 
 ANALYSIS
 
 10
 The issue before us is whether ESI was a proper party to bring an antitrust action against these defendants. The class of persons who may maintain a private damages action under the antitrust laws is defined in Section Four of the Clayton Act. 15 U.S.C. Sec. 15(a) (1982). That section provides:
 
 
 11
 [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
 
 
 12
 Read literally, the statute could encompass any harm directly or indirectly attributable to any antitrust violation. The Supreme Court has recognized that Congress intended the protections of the antitrust laws to extend to a broad range of potential victims. See McCready, 457 U.S. at 472, 102 S.Ct. at 2544. The Court has declined, however, to devise a formula to determine who may properly bring claims because the "infinite variety of claims that may arise" under the antitrust laws renders such an effort "virtually impossible." Associated General Contractors, 459 U.S. at 536, 103 S.Ct. at 908.
 
 
 13
 Some general principles emerge from the cases. Most important, the Supreme Court has recognized that, despite the broad wording of Section Four, "there is a point beyond which the wrongdoer should not be held liable." Illinois Brick Co. v. Illinois, 431 U.S. 720, 760, 97 S.Ct. 2061, 2082, 52 L.Ed.2d 707 (1977) (Brennan, J., dissenting). "It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." McCready, 457 U.S. at 477, 102 S.Ct. at 2547.
 
 
 14
 In Associated General Contractors, the Court's latest pronouncement on the question, a labor union was not permitted to challenge an alleged restraint under which an association of building and construction contractors coerced landowners and others into using only nonunion contractors and subcontractors on their construction projects. The union, though clearly injured by the restraint, was held to be too remote a party to bring the suit. In its opinion, the Court recognized the "contradictory and inconsistent results" in this area due to the use of ill-defined tests for standing such as "target area," "direct injury" or "zone of interests." Associated General Contractors, 459 U.S. at 536 n. 33, 103 S.Ct. at 907 n. 33; accord Bhan v. NME Hospitals, Inc., 772 F.2d 1467, 1469-70 n. 2 (9th Cir.1985); Bubar v. Ampco Foods, Inc., 752 F.2d 445, 449 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985). In place of these tests, the Court set out a series of factors to be evaluated case-by-case to determine whether a particular plaintiff should be permitted to bring an antitrust action. See 459 U.S. at 545, 103 S.Ct. at 912.
 
 
 15
 Obviously a plaintiff must allege an antitrust violation with consequential harm to him. An allegation that plaintiff's injury was intended by the defendant is also important. But allegations of violation, harm and intent are insufficient as a matter of law to establish the plaintiff as a proper party. Id. Rather, the nature of plaintiff's injury, the directness or indirectness of the asserted injury, the potential for duplicative recovery or complex apportionment of damages, the speculative nature of damages asserted, and the existence of more direct victims of the alleged violation are factors a court must consider when making the "proper party" determination. Id.; Bubar, 752 F.2d at 449.
 
 
 16
 Applying these factors to the case at bar, we conclude that ESI is not a proper party to bring this action.[4] It is clear that ESI was injured as a result of activity that also violated the antitrust laws.[5] Moreover, some evidence indicates that the harm to ESI was intended. But examining the nature of ESI's injury, we find it was not of "the type the antitrust laws were intended to forestall." Bubar, 752 F.2d at 449. As with the union in Associated General Contractors, ESI is neither a consumer of defendants' goods or services nor a competitor of the defendants in the restrained market. See 459 U.S. at 538-39, 103 S.Ct. at 908-09.
 
 
 17
 ESI argues that it satisfies the "consumer or competitor" criterion because it competes directly with Film Marketing as a licensing agent. We cannot agree. While it is true that the two firms compete, the requirement laid down in Associated General Contractors is that the plaintiff and conspirators compete in the "market in which trade was restrained." Id. 459 U.S. at 539, 103 S.Ct. at 909 (emphasis added). Here, it is undisputed that the restraint is in the market for first-run film exhibition in the MetroCenter area of Phoenix. As a licensing agent, ESI is quite clearly neither a competitor of these exhibitors nor a consumer of goods or services in this market.
 
 
 18
 Moreover, even if it is accepted that ESI's discharge was an intended aspect of the "split" arrangement between AMC and B & R, the direct injury resulting from the conspiracy in restraint of trade was to film distributors, not licensing agents. ESI's injury, like that of the union in Associated General Contractors, was merely indirect and derivative.
 
 
 19
 ESI points to the Supreme Court decision in Blue Shield of Virginia v. McCready, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), to support its arguments. In that case, plaintiff McCready, a Blue Shield subscriber, alleged that Blue Shield and an organization of psychiatrists had unlawfully conspired to restrain competition in the market for psychotherapeutic services by providing insurance coverage only when services were provided by psychiatrists and not psychologists. Id. 457 U.S. at 469-70, 102 S.Ct. at 2543. The Court permitted McCready to maintain the action despite the arguable indirectness of her injury. But as a Blue Shield subscriber, McCready clearly qualified as a consumer of services in the restrained market. The situation is thus quite unlike the case at bar.
 
 
 20
 The decision we reach here is in full accord with our recent decision in Bhan v. NME Hospitals, Inc., 772 F.2d 1467 (9th Cir.1985). There, we held that for injury to be legally related to anticompetitive behavior, "the injured party [must] be a participant in the same market as the alleged malefactors." Id. at 1470. In that case, a nurse anesthetist sued a hospital and physician anesthesiologists alleging that an agreement between them illegally restrained the market for anesthesia services. The district court dismissed the complaint for lack of standing, stating that, as a nurse, Bhan could not participate in the same market as physician anesthesiologists. We reversed because we concluded that the mere fact that nurse anesthetists require physician supervision did not foreclose the possibility that their services may be reasonably interchangeable with those of physicians, so that the two groups would be competitors in the same market. Id. at 1471.
 
 
 21
 Here, no such market overlap exists. It is plain that the restrained competition was that between film exhibitors, and the direct and intended injury was to film distributors. As a licensing agent, ESI was not a participant in the restrained market; it was merely an indirect victim of the AMC-B & R conspiracy.
 
 
 22
 Our decision in Parks v. Watson, 716 F.2d 646 (9th Cir.1983), is not to the contrary. There, a developer sought to have certain platted streets in Klamath Falls, Oregon, vacated so that it could build housing units on the land. Several geothermal wells were located on the property, and the developer had planned to heat his housing units as well as structures outside his complex with the hot water. The city refused to vacate the streets unless the developer agreed to dedicate its geothermal wells to the city. We concluded that the developer could bring his antitrust claim against the city. We held that the restraint was in the market for off-site geothermal heat. In that market, the city and the developer were clearly competitors. See id. at 658-60.
 
 
 23
 ESI's reliance on Ostrofe v. H.S. Crocker Co., Inc., 740 F.2d 739 (9th Cir.1984), cert. dismissed, --- U.S. ----, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985), is also misplaced. In Ostrofe, the plaintiff was sales manager of a label manufacturing firm, and he steadfastly refused to cooperate with a clearly illegal price-fixing scheme in which his company and others were involved. Eventually he was fired for his refusal to cooperate, and he brought a treble damages claim. This court held that Ostrofe could challenge the restraint in the label market, but this was because Ostrofe was more than merely injured by the conspiracy. As Crocker's sales manager, his failure to cooperate in the scheme meant that he stood as a clear impediment to its effectuation. As we found, Ostrofe was an "essential participant" in the scheme, which could not succeed "without his active participation." 740 F.2d at 745-46.[6]
 
 
 24
 By contrast, ESI in no way impaired either the creation of the AMC-B & R pact or its implementation. While ESI may have been discharged as part of the agreement, its continued employment would not have stood in the way of the parties' agreeing to reduce competition between themselves.
 
 
 25
 We also find Chelson v. Oregonian Publishing Co., 715 F.2d 1368 (9th Cir.1983), distinguishable. There, a group of newsdealers claimed that the Oregonian had violated the antitrust laws by interfering with dealer attempts to reach agreement with an Oregonian competitor to distribute its advertising circulars. The restrained market was "advertising distribution," and the district court had granted defendants summary judgment, finding plaintiffs had suffered no antitrust injury. This court reversed. Although we agreed that the dealers were neither consumers nor competitors in the restrained market, we concluded that there was a disputed issue of fact as to whether their injury was "inextricably intertwined" with the alleged injury the paper sought to inflict on the competing advertisers. Id. at 1371. We also pointed out that "[a]lthough the dealers [were] neither consumers nor competitors in the relevant market, it is clear that their interests would directly be served by enhanced competition in the market." Id.
 
 
 26
 We do not see how ESI's injury can be considered parallel to that of the newsdealers in Chelson. ESI's injury is not "inextricably intertwined" with the injury inflicted upon the film distributors because ESI's discharge, though agreed upon by the AMC-B & R conspiracy, was not necessary for the creation or implementation of the trade-restraining split agreement itself. More important, ESI's asserted interest, unlike that of the newsdealers in Chelson, is not in enhanced competition between exhibitors. On the contrary, the gravamen of ESI's complaint, realistically construed, is that the conspirators dispensed with ESI's services when ESI would have preferred to serve the continuing conspiracy. At best, ESI was neutral on the question whether trade was restrained or not. ESI's injury comes not from the existence of a conspiracy, nor from its trade-restraining effects, but from the conspirators' refusal to employ ESI to achieve their ends. That kind of injury hardly makes ESI a proper party to enforce the law against conspiracies in restraint of trade.[7] If enforcement of the Sherman Act is indeed necessary in these circumstances, distributors, injured by the artificial limits on prices the AMC-B & R agreement creates, are the appropriate parties to bring this lawsuit.
 
 
 27
 At oral argument, appellee contended that film distributors depend too much on exhibitors to anger them by enforcing the antitrust laws. ESI draws the conclusion that no party other than it is available to act as a private attorney general in this case. We are unpersuaded. While it is clear that distributors depend on exhibitors, it is equally clear that the converse is true. Distributors may view the present restraint as de minimis and choose not to enforce the letter of the law for valid business reasons. Their hands are not tied, however, and we have little doubt that they will act if the restraint ultimately justifies it. See General Cinema Corp. v. Buena Vista Distribution Co., 532 F.Supp. 1244 (C.D.Cal.1982). In the meantime, we cannot agree with ESI's implicit premise that every restraint must become the subject of a private antitrust action even when those directly injured do not choose to make it so. Denying ESI a remedy "on the basis of the allegations in this case is not likely to leave a significant antitrust violation undetected or unremedied." Associated General Contractors, 459 U.S. at 542, 103 S.Ct. at 911.
 
 CONCLUSION
 
 28
 Balancing all of the factors noted in Associated General Contractors, we conclude that ESI was not a proper party to bring this action. Our ruling makes it unnecessary to address other issues raised by AMC. The judgment of the district court in favor of ESI must be reversed and the cause remanded with instructions to dismiss the antitrust action because plaintiff is not a proper party to bring it. It follows that we also vacate the award of attorneys' fees and costs to plaintiffs.
 
 
 29
 REVERSED AND REMANDED.
 
 
 
 [1]
 Although the parties argue in terms of "standing," we will in most instances use the term "proper party" to differentiate our issue from the constitutional one of "injury in fact." See Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 907, 74 L.Ed.2d 723 (1983); Bhan v. NME Hospitals, Inc., 772 F.2d 1467, 1469 & n. 2 (9th Cir.1985)
 
 
 [2]
 The district court did not grant injunctive relief, and it dismissed the complaint as to several other parties originally named as defendants. The complaint also included an ancillary claim under state law for tortious interference with contractual relationship or prospective advantage. Defendants received a directed verdict on this count. ESI does not challenge these rulings on appeal
 
 
 [3]
 AMC also argues that the jury verdict was not supported by substantial evidence and that the damage award was based in part on evidence improperly admitted by the district court. Because of our decision that ESI was not a proper party to bring this action, we need not reach these other issues. We also need not consider ESI's cross-appeal regarding attorneys' fees and costs
 
 
 [4]
 The issue of status as a proper party is a pure question of law, Bubar, 752 F.2d at 449, and thus is reviewed de novo by this court. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)
 
 
 [5]
 The district court held that a rule of reason analysis should apply when evaluating the AMC-B & R agreement in this case. Other courts have found similar split agreements to be horizontal restraints on competition that are per se illegal under Section One. See, e.g., United States v. Capitol Service, Inc., 756 F.2d 502 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 311, 88 L.Ed.2d 288 (1985); General Cinema Corp. v. Buena Vista Distribution Co., 532 F.Supp. 1244 (C.D.Cal.1982); but see Greenbrier Cinemas, Inc. v. Attorney General, 511 F.Supp. 1046 (W.D.Va.1981). We, of course, intimate no view as to whether split arrangements should be governed by a per se or rule of reason analysis
 
 
 [6]
 This court also held Ostrofe had standing to challenge an alleged boycott in the market for his services. As we stated, no one other than Ostrofe "had a greater incentive to sue to restore competition" in that market. Ostrofe, 740 F.2d at 743. Clearly in that market, Ostrofe was the direct victim of the conspiracy and the "natural vindicator" of antitrust policy. Id
 
 
 [7]
 Also without merit is appellee's claim that if it lacks standing to bring its antitrust claim, no relief is available to it to right the wrong it has suffered. ESI's complaint originally included a claim for damages for tortious interference with contractual relationship or with prospective advantage. That claim, as noted, was dismissed by the district court, a ruling not challenged by ESI on appeal. Other business tort claims may have been possible as well. The fact that injury has occurred and that other claims have failed does not permit this court to expand the coverage of Section Four