**SACRAMENTO VALLEY, CHAPTER OF THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, Plaintiff–Appellee,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 340, Defendant–Appellant.**

No. 86–2026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1988.

Decided Oct. 18, 1989.

Robert E. Jesinger and Christopher E. Platten, Wylie, McBride, Jesinger & Sure, San Jose, Cal., for defendant-appellant.

Ray E. Smith, Thierman, Cook, Brown & Mason, San Francisco, Cal., for plaintiff-appellee.

Before WISDOM,* THOMPSON and TROTT, Circuit Judges.

---

\* Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

## FACTS AND PROCEEDINGS

DAVID R. THOMPSON, Circuit Judge:

The Sacramento Valley Chapter of the National Electrical Contractors Association and several of its employer members (collectively "NECA") filed a five-count complaint under sections 301 and 303 of the Labor Management Relations Act, 29 U.S.C. §§ 185 and 187, seeking damages from the International Brotherhood of Electrical Workers ("IBEW"), and Local 340 of the IBEW ("Local 340").

In response, Local 340 filed a counterclaim against both NECA and a separate counter-defendant, the National Association of Independent Unions ("NAIU"). It alleged violations of sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and sought damages and injunctive relief for alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. NECA moved to dismiss the counterclaim.

By published decision the district court dismissed Local 340's counterclaim in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). *Sacramento Valley Chapter v. International Brotherhood of Electrical Workers,* 632 F.Supp. 1403 (E.D. Cal.1986) ("*Sacramento*"). Applying *Associated General Contractors of California, Inc. v. California State Council of Carpenters, et al.,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("*AGC*"), the district court concluded that Local 340 lacked antitrust standing. *Id.* Local 340 appeals. We affirm.

## ANALYSIS

In this case we are faced with the question whether Local 340 has standing to bring a private antitrust action. *See AGC,* 459 U.S. at 535 n. 31, 103 S.Ct. at 907 n. 31. Section 4 of the Clayton Act permits recovery of treble damages by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a) (1982). Congress, however, "did not intend to provide a private remedy for all injuries that might conceivably be traced to an antitrust violation," and courts accordingly have placed restrictions on standing in antitrust cases. *Bubar v. Ampco Foods, Inc.,* 752 F.2d 445, 448 (9th Cir.) (citing *Blue Shield of Virginia, Inc. v. McCready,* 457 U.S. 465, 472–80, 102 S.Ct. 2540, 2544–49, 73 L.Ed.2d 149 (1982)), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985).

■ To determine whether a given plaintiff is a proper party to bring an antitrust action, the Supreme Court has eschewed adoption of a black-letter rule, and has instead required a case-by-case analysis of "factors that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances." *AGC,* 459 U.S. at 536–37, 103 S.Ct. at 908. Factors identified by the Supreme Court as relevant to this inquiry are: (1) whether the plaintiff's alleged injury is the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; and (4) keeping the scope of complex antitrust trials within judicially manageable limits. *Lucas v. Bechtel Corp.,* 800 F.2d 839, 844 (9th Cir.1986) ("*Lucas II*") (citing *AGC,* 459 U.S. at 538–45, 103 S.Ct. at 908–12).[1]

### A. Local 340's Counterclaim

Before applying *AGC*'s multifactor analysis, we briefly summarize the content of Local 340's counterclaim.[2] The counterclaim describes a nearly forty-year history of agreements between NECA and Local 340 which ended in 1981. Until that time, Local 340 represented most journeymen and apprentice electricians in the Sacramento area, and the prevailing wage rate

---

1. For convenience, we have enumerated four *AGC* "factors" here, as we did in *Lucas II.* The Supreme Court did not actually number the factors to be considered, and we have elsewhere distilled from *AGC* a varying number of factors. *See, e.g., Eagle v. Starkist Foods, Inc.,* 812 F.2d 538, 540 (9th Cir.1987) (five factors); *Hand-*

*gards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1295 (9th Cir.1984) (six factors), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985).

2. The counterclaim is described in greater detail in the district court's decision. *See Sacramento,* 632 F.Supp. at 1405–06.

for electricians in that area was the rate paid to Local 340 members under the collective bargaining agreements. This situation changed in the fall of 1981. When negotiations to reach a new agreement failed, Local 340 struck the NECA employers. NECA thereafter signed a new collective bargaining agreement with the NAIU.

Local 340, in five interrelated claims in its counterclaim, alleges that NECA and other employers engaged in a scheme to fix electricians' wages and benefits in the Sacramento area "at levels significantly below that paid by employers who had collective bargaining agreements with IBEW Local 340." Counterclaim at ¶ 11. It further alleges the NAIU is not a bona fide labor organization, and that the NAIU's presence as a party to the new collective bargaining agreement was a sham. According to Local 340, the aims of the conspiracy included: driving out non-NECA employers (*i.e.,* those who had agreements with Local 340), reducing the work and pay of electricians represented by Local 340, and eliminating Local 340 as a representative of area electricians. Local 340 alleged loss of jobs, wages and benefits for its employees; injury to its "organizational and representational business activities and property"; and loss of revenue, dues and membership.

## B. *Application of the AGC Factors*

We have stated that the first *AGC* factor, antitrust injury, is of "tremendous significance." *Bhan v. NME Hospitals, Inc.,* 772 F.2d 1467, 1470 n. 3 (9th Cir.1985). We now consider it.

"The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." *Id.* at 1470 (citing *AGC,* 459 U.S. at 538, 539, 103 S.Ct. 908, 909) (footnote omitted). As the dis-

trict court noted, Local 340's first, fourth and fifth claims allege anti-competitive behavior in a market (contractor's services) in which Local 340 does not itself participate.[3] *See Sacramento,* 632 F.Supp. at 1410, 1411. Indeed, these claims are quite similar to those rejected by the Supreme Court as a basis for antitrust standing in *AGC.* In that case, carpenters unions alleged that a multiemployer contractors' association and some of its members conspired to encourage or coerce member and non-member contractors to refuse to enter into collective bargaining relationships with plaintiffs. The alleged purpose of these activities was to weaken or destroy the trade of contractors who had agreements with the plaintiffs, and "to restrain 'the free exercise of the business activities of plaintiffs and each of them.' " *AGC,* 459 U.S. at 523, 103 S.Ct. at 901 (footnote omitted). The Court read the unions' complaint as alleging injury in "the market for construction contracting and subcontracting." *Id.* at 527, 103 S.Ct. at 903 (footnote omitted). In concluding that the unions failed to assert antitrust injury, the Court deemed significant the fact that the plaintiff "was neither a consumer nor a competitor in the market in which trade was restrained." *AGC,* 459 U.S. at 539, 103 S.Ct. at 909.

Local 340 seeks to distinguish its counterclaim from the complaint in *AGC* by pointing to allegations contained in its third claim.[4] In this claim it alleges that the employers' conspiracy sought to eliminate Local 340 "as a competitor in the *market for labor union services* and collective bargaining contract market for electricians employed in the Sacramento area." Counterclaim at ¶ 18 (emphasis added). The district court concluded that because "unions, in their representative capacity, are not in business for purposes of the Sherman Act," Local 340 had failed to assert an antitrust injury. *Sacramento,* 632

---

**3.** We need not pause long over Local 340's second claim, which alleges that the conspirators coerced, threatened and restrained non-NECA employers and contractors from entering into collective bargaining agreements with Local 340. The district court correctly noted that under *AGC,* this allegation "does not describe an antitrust violation." *AGC,* 459 U.S. at 527, 103

S.Ct. at 902. *See also Sacramento,* 632 F.Supp. at 1410–11.

**4.** Indeed, the vast bulk of the union's brief and argument were directed toward this claim. Local 340 does not seriously contest the district court's dismissal of its other four claims.

F.Supp. at 1414. While we do not go so far,[5] we conclude that the allegations contained in Local 340's third claim, which are the only allegations in the counterclaim arguably sufficient to allege an antitrust injury, do not satisfy the requirements for antitrust standing under *AGC* and Ninth Circuit precedent.

Local 340 emphasizes that by its third claim it has alleged antitrust injury in a market distinct from the contractor's market (*i.e.*, the "labor market"). It points to language in *AGC* in which the Supreme Court explicitly noted that the complaining union there "[did] not allege any restraint on competition in the market for labor union services." *AGC*, 459 U.S. at 527 n. 14, 103 S.Ct. at 903 n. 14. The Court in *AGC* also referred to two cases from other circuits in which standing had been upheld on the basis of injuries alleged in such a market. *Id.* at n. 10 (citing *Tugboat, Inc. v. Mobile Towing Co.*, 534 F.2d 1172 (5th Cir.1976) and *International Ass'n of Heat & Frost Insulators v. United Contractors Ass'n*, 483 F.2d 384 (3d Cir.1973)). In *AGC*, however, the Court did not hold that allegations of restraint in a labor market would necessarily have remedied the defects in the unions' complaint. Rather, the Court cautioned that each case must be examined on its specific facts for the presence of allegations of injury "of the type that the antitrust statute was intended to forestall." *AGC*, 459 U.S. at 540, 103 S.Ct. at 909.

*Tugboat, Inc. v. Mobile Towing Co.*, 534 F.2d 1172 (5th Cir.1976) ("*Tugboat*"), one of the cases alluded to by the Court as different from the *AGC* case, is pressed in particular by Local 340 in support of its standing argument. The facts of *Tugboat* are similar to those of the case at hand. In *Tugboat*, a union and its members alleged that a tugboat company conspired with members of a different union. This rival union allegedly was "dominated" by the tugboat company. The defendants conspired to restrain trade in the towing industry by unfairly obtaining labor costs far cheaper than those available to a competing tugboat company that employed the plaintiff union. The Fifth Circuit concluded the plaintiff union had antitrust standing.

The *Tugboat* case is not dispositive here. First, it is out-of-circuit authority, and therefore not controlling. Second, and more important, *Tugboat* preceded, and therefore did not apply, the multifactor analysis required by *AGC*. Rather, it applied the so-called "target area" test, a test the Supreme Court disavowed in *AGC*. *See Bhan v. NME Hospitals, Inc.*, 772 F.2d at 1470 n. 2. In *Tugboat*, the Fifth Circuit concluded that plaintiffs had standing "not because they suffered injuries as a result of their employer being victimized by violations of the antitrust laws, but because the conspiracy ... was *aimed at the employees* as much as it was at the employer." *Tugboat*, 534 F.2d at 1177. (Emphasis added). This ended its inquiry. Under *AGC*, such a determination is not sufficient by itself to confer antitrust standing upon a plaintiff. *See AGC*, 459 U.S. at 537, 103 S.Ct. at 908 (allegation that defendant intended to cause harm to union as well as employers "not a panacea that will enable any complaint to withstand a motion to dismiss"). *See also Blue Shield of Virginia v. McCready*, 457 U.S. 465, 479, 102 S.Ct. 2540, 2548 ("The availability of the section 4 remedy to some person who claims its benefit is not a question of the specific intent of the conspirators.").

In addition to the foregoing considerations, not long after the district court rendered its decision in the present case, this circuit decided *Lucas II*,[6] a case we believe forecloses Local 340's contention that its "labor services market" allegations auto-

---

5. Our conclusion here does not require us to pass on the merits of the district court's analysis. It is sufficient for us that the Supreme Court implicitly has accepted the possibility that a union may be in business for Sherman Act purposes. *See AGC*, 459 U.S. at 527 n. 14, 103 S.Ct. at 903 n. 14.

6. In its decision, the district court refers to an earlier stage of the *Lucas* litigation, *Lucas v. Bechtel Corp.*, 633 F.2d 757 (9th Cir.1980) ("*Lucas I*"). *See Sacramento*, 632 F.Supp. at 1411. *Lucas I* was decided before *AGC*.

matically save its complaint from *AGC*'s strictures. In *Lucas II*, plaintiffs, two local union employees, claimed that an employer and various union defendants "violated the antitrust laws by conspiring to restrain trade in the labor market in order to monopolize the power plant construction market." *Lucas II*, 800 F.2d at 842. Thus, like Local 340, the *Lucas II* plaintiffs alleged conspiracies in two markets: a "primary" one in a contractor's market; and "an intentional secondary conspiracy to depress wages in the *electrician labor market* in order to effect the primary conspiracy." *Lucas II*, 800 F.2d at 844 (emphasis added). We nevertheless held that the employees lacked antitrust standing, largely for failure to satisfy the injury factor. *See id.* In so doing we noted that although the employees were participants in the labor market, "it was not clear whether [their] interests 'would be served or disserved by enhanced competition in the market.'" *Lucas II*, 800 F.2d at 844 (quoting *AGC*, 459 U.S. at 539, 103 S.Ct. at 909). For like reasons, Local 340's counterclaim fails to adequately assert antitrust injury here.

Our conclusion here is consistent with the Supreme Court's admonishment in *AGC* that "a union, in its capacity as a bargaining representative, will frequently not be a part of the class the Sherman Act was designed to protect, especially in disputes with employers with whom it bargains." *AGC*, 459 U.S. at 540, 103 S.Ct. at 909. In *AGC* the Court emphasized that "a separate body of labor law" was "specifically designed to protect and encourage the organizational and representational activities of labor unions." *Id.* at 539–40, 103 S.Ct. at 909. Thus the allegations in Local 340's counterclaim that its organizational and representational activities were injured, *see* Counterclaim ¶ 19, do not necessarily aid its assertion of antitrust injury. Notably, in *AGC*, the Court concluded that "particularly in light of the long standing collective bargaining relationship between the parties, the Union's labor market interests seem to predominate, and the [injury] test is not satisfied." *Id.* Local 340's allegations here fall into the same category.

In a related manner, Local 340's counterclaim runs afoul of *AGC*'s second requirement, that the injury asserted be direct. The derivative nature of the union's harm with regard to its allegations involving anti-competitive behavior in the contractor's market is self-evident. Further, in *AGC*, the Court acknowledged that the plaintiff there had alleged injuries to *its* "business activities." *AGC*, 459 U.S. at 541, 103 S.Ct. at 910. Nevertheless, the Court concluded that these injuries depended upon actions by defendants directed toward other *employers*. The Court stated that "[i]t is obvious that any [injuries to the Union's "business activities"] were only an indirect result of whatever harm may have been suffered by ... contractors and subcontractors." *Id.* at 541, 103 S.Ct. at 910 (footnote omitted). The same is true here. The defendants *acted* in the contractor's market to effect the injuries alleged.

Further, as was true in both *AGC* and *Lucas II*, here there exists "an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement," namely the non-NECA contractors. *Lucas II*, 800 F.2d at 845 (quoting *AGC*, 459 U.S. at 542, 103 S.Ct. at 910). This "diminishes the justification for allowing a more remote party ... to perform the office of a private attorney general." *Id.* As the Court stated in *AGC*, "if there is substance to the [plaintiff's] claim it is difficult to understand why these direct victims of the conspiracy have not asserted any claim in their own right." *AGC*, 459 U.S. at 542 n. 47, 103 S.Ct. at 910 n. 47.

The third and fourth *AGC* factors do nothing to help Local 340's counterclaim. Much of the harm alleged by Local 340 appears speculative and complex. As the Court noted in *AGC*, "[t]he indirectness of the alleged injury also implicates the strong interest ... in keeping the scope of complex antitrust trials within manageable limits." *AGC*, 459 U.S. at 543, 103 S.Ct. at 911 (footnote omitted). For example, the alleged "loss of work opportunities" could be the result, at least in part, of a wide variety of independent factors having nothing to do with the alleged conspiracy.

Moreover it would be difficult, if not impossible, to determine what Local 340's "share" of collective bargaining agreements is. Finally, separating Local 340's injuries from those of the injured employers could prove troublesome. As in *AGC*, "the District Court would face problems of identifying damages and apportioning them among directly victimized contractors ... and indirectly affected employees and union entities." *Id.* at 545. *See generally AGC*, 459 U.S. at 542–45, 103 S.Ct. at 910–12.

In sum, although Local 340 "does allege a causal connection between an antitrust violation and harm to [Local 340] and further alleges that the defendants intended to cause that harm," *AGC*, 459 U.S. at 537, 103 S.Ct. at 908, the allegations of its counterclaim do not show that it is a proper party to bring this antitrust action.

AFFIRMED.