15 F.3d 1085
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 GO-VIDEO, INCORPORATED, a Delaware Corporation, Plaintiff-Appellant,
v.
MATSUSHITA HOLDING CORPORATION, Matsushita Electric
Industrial Co., Ltd., Matsushita Acquisition
Corporation, Defendants-Appellees,
MCA, Inc., Defendant-Intervenor.
 No. 92-16847.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Jan. 6, 1994.
 
 MEMORANDUM*
 Before: ALARCON, LEAVY AND KLEINFELD, Circuit Judges.
 
 
 1
 We affirm the dismissal of Go-Video's antitrust challenge to Matsushita's acquisition of MCA.
 
 
 2
 The district court dismissed Go-Video's Sherman Antitrust claims and its Clayton Act claim under paragraph 46 of the complaint for failure to state a claim. The remaining claims for divestiture and damages under sections 4, 7, and 16 of the Clayton Act were dismissed for lack of standing.
 
 
 3
 On appeal, Go-Video's challenge to the district court's dismissal of its sections 1 and 2 Sherman Antitrust claims is relegated to a footnote in the body of its argument. (Brief of Appellant at 11 n. 5) The district court correctly dismissed Go-Video's Sherman Act claims.[1] Go-Video's claims that Matsushita's acquisition of MCA violated section 7 of the Clayton Act, entitling Go-Video to divestiture under section 16 and treble damages under section 4, were also properly dismissed, as we explain below.
 
 
 4
 We review the district court's dismissal de novo. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 1985 (9th Cir.1992) (en banc) (12(b)(6) dismissal); Ellis v. LaMesa, 990 F.2d 1518, 1523 (9th Cir.1993) (standing). We may affirm on any ground supported in the record, even if different from the ground upon which the district court dismissed. National Audubon Soc'y v. United States Forest Serv., 4 F.3d 832, 841 (9th Cir.1993). The district court dismissed one of the claims relating to a possible change in video format (Complaint p 46) for failure to state a claim. We conclude Go-Video lacks standing to assert any of its claims.
 
 
 5
 It is extremely difficult to determine exactly what facts are alleged, and what claims are made. This is Go-Video's fault. The complaint is excessively long--56 pages full of irrelevancies such as allusions to the nationalities of various market participants. It includes a history of modern Japan as well as a reference to the Arab boycott of Israel. Go-Video was obligated to make a "short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2); Hatch v. Reliance Ins. Co., 758 F.2d 409, 415 (9th Cir.1985). It did not. As a practical matter, we can analyze the complaint only by preparing an outline, which amounts to writing a "short and plain statement of the claim" ourselves. Go-Video's form of complaint is not fair to defendants. Because of our need to prepare what amounts to a complaint conforming to Rule 8, the defendants never had a full opportunity to respond to what we are using as the statement of claims. Since defendants prevail, though, they suffer no prejudice from our doing the plaintiff's work. The district court did not dismiss for violation of Fed.R.Civ.P. 8, a matter within its discretion, e.g., Hatch, 758 F.2d at 415, so our determination is not based on that rule. But if we have overlooked or misunderstood some claim because of the prolixity of the complaint, Go-Video has only itself to blame.
 
 
 6
 The district court dismissed the majority of Go-Video's claims for lack of standing. To assert standing under sections 4 and 16 of the Clayton Act, an antitrust plaintiff (1) must have business or property interests in the allegedly affected market, see Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 111-13 (1986); (2) the alleged injury must be causally related to alleged antitrust activity, see Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); Sundance Land Corp. v. Community First Fed. Savs. & Loan Ass'n, 840 F.2d 653, 661 (9th Cir.1988); and (3) the injury must be "antitrust injury," see Brunswick, 429 U.S. at 489; Sundance Land, 840 F.2d at 661.
 
 
 7
 These strictures require dismissal of all the claims for lack of standing. The only product Go-Video makes is a dual-deck videocassette recorder, so the district court plainly was correct in dismissing for lack of standing all Go-Video's claims that the acquisition would diminish competition in sectors of the consumer electronics market in which Go-Video did not have "business or property." Even assuming that the acquisition would reduce competition in television sets, audio play and recording equipment, television programing, and audio recordings, Go-Video would suffer no harm. It has not alleged that it makes, sells, or buys any of these products, or that its business is directly affected by competition among the firms that do. To have standing, the injured party must be a consumer of the violator's goods or a competitor of the violator in the restrained market. Eagle v. Star-Kist Foods, Inc., 812 F.2d 538, 540 (9th Cir.1987); Bhan v. NME Hosps., Inc., 772 F.2d 1467, 1470 (9th Cir.1985).
 
 
 8
 Go-Video correctly points to a distinction between the requirements for section 4 and section 16 standing. Cargill, 479 U.S. at 111-112; Lucas v. Bechtel Corp., 800 F.2d 839, 847 (9th Cir.1986). But the distinction is immaterial, because a plaintiff cannot obtain an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred. Cargill, 479 U.S. at 112. There must be threatened harm to the plaintiff's business or property, not just other firms' business or property.
 
 
 9
 Several of the claims do relate to Go-Video's market to some extent. Among these are the following:
 
 
 10
 1. Matsushita's control of MCA will enable Matsushita to control VCR formats so that 8-millimeter format may replace VHS; If Matsushita were prevented from controlling MCA, the VCR manufacturers would be less likely to change formats, because they would not know whether the movie makers would follow;
 
 
 11
 2. Matsushita's ownership of MCA will enable it to compete unfairly with other manufacturers by including videotapes of MCA movies with its VCRs;
 
 
 12
 3. Ownership of MCA will enable Matsushita to sell VCRs in video rental stores;
 
 
 13
 4. MCA opposes dual-deck VCR's because of "alleged concern with copying copyrighted materials," so Matsushita's ownership of MCA will reduce the likelihood that Matsushita will choose to make dual-deck VCRs and license Go-Video's patents to engage in that manufacture;
 
 
 14
 5. Competing hardware makers will have to have assured sources of software to compete with the Matsushita-MCA combination;
 
 
 15
 6. MCA will have more money after Matsushita buys all its stock, so Matsushita will be able to buy more companies, so software in non-VHS formats may be priced higher than VHS software, and VHS tapes may become scarce.
 
 
 16
 7. Matsushita's ownership of MCA will reduce the likelihood that MCA will produce "Japan-bashing" and other sorts of movies offensive to the Japanese, so there will fewer of them, reducing market demand and prices for its hardware;
 
 
 17
 Some of these claims do not assert antitrust injury, that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick, 429 U.S. at 489. The injury must reflect either an anticompetitive effect of the violation or anticompetitive acts made possible by the violation. Id. The antitrust laws are not intended to facilitate copying of copyrighted materials, or promote speech hostile to Japan or other content which particular speakers might choose to abjure. "The antitrust laws were never meant to be a panacea for all wrongs." Parmelee Transp. Co. v. Keeshin, 292 F.2d 794, 804 (7th Cir.1961). These considerations require the court to dismiss the claims here labelled 4 and 7 for lack of standing.
 
 
 18
 To establish causation, the pleading must sufficiently allege that the antitrust injury flows from that which makes the conduct unlawful. Brunswick, 429 U.S. at 489. The wrongful conduct must be both the factual and the legal cause of the injury. Sundance Land, 840 F.2d at 662; California Computer Prods. v. International Business Machines Corp., 613 F.2d 727, 732 (9th Cir.1979). The chain of causation should lead directly to the immediate victims as plaintiffs. Eagle v. Star-Kist Foods, Inc., 812 F.2d 538, 541 (9th Cir.1987). Indirect, derivative speculative injury will not suffice. Id. at 542. This part of the standing requirement disposes of the remaining claims.
 
 
 19
 No causal link is pleaded between Matsushita's anticipated ability to obtain videotapes from MCA and any antitrust injury to Go-Video. So far as the complaint (and common sense) indicate, Go-Video could buy videotapes and bundle them with its own VCRs in order to compete with Matsushita if it included "free" tapes with VCRs. No causal link is pleaded or apparent between Matsushita buying MCA, and the ability of Matsushita to sell VCRs in Box Office Video, Blockbuster Video, grocery store and gas station video rental counters, or any other video stores. The complaint does not allege that MCA owns all or any of the country's video rental businesses. That disposes of the second and third claims.
 
 
 20
 Claims 5 and 6 are too speculative to support antitrust standing. Because VCRs can tape television broadcasts, VCR manufacturers have an assured source of software. If Matsushita paid MCA shareholders for their stock, Matsushita would have less cash and more debt. We cannot see how this would cause scarcity of VHS tapes, or higher prices on other formats, or how either could harm Go-Video.
 
 
 21
 The only claim which gives us pause is 1, relating to possible format changes. But the causal link is too speculative to support standing. The complaint does not allege that MCA or other movie makers have quit making movies on 35 mm or 70 mm film and begun making the movies on consumer-type VHS videotape. So long as MCA and other movie makers make their movies on film, their economic interest would be to copy them onto whatever formats sell, whether positive 35 mm film stock for movie theaters, VHS, Beta, 8 mm, videodisk, or any other format which may be popular from time to time. No causal link is apparent between Matsushita's purchase of MCA, and the formats in which movie makers will distribute videotapes of movies. No reason is apparent why, if Matsushita and MCA limited themselves to some new format such as 8 mm, the other movie distributors would not take advantage of MCA's absence from the VHS market by expanding their VHS production. If Matsushita and MCA were to monopolize the market in prerecorded 8 mm videotapes, and raise prices commensurately with monopoly power, then competitors like Go-Video that supply VHS equipment or tapes could make more money, not less, under the umbrella of the monopoly price. Nor does the complaint plead the unavailability of copying from television as a source of programming for VCR owners.
 
 
 22
 The complaint alludes to the inability even of the giant Sony to sustain a competing format, Beta, in the face of the tremendous base of VHS machines owned by consumers. People who go to Box Office Video to rent a tape will, as the complaint suggests, need to look in the section of the store for the format of their VCR. But the complaint does not provide any facts suggesting that the giants in the VCR industry would find it worth their while to abandon the format most widespread in people's home video libraries and in video rental stores, and spend the money to convert their machines to a new format, in order to squeeze out a relatively tiny participant in the market like Go-Video. The claim that Matsushita and its alleged coconspirators control 90% of the market cuts against this proposition rather than in favor of it. If a new format were so superior in performance to VHS as to induce VCR owners to junk their VHS machines and buy new ones, the harm done by the technological improvement would be to a competitor, Go-Video, rather than to consumers. "[T]he antitrust laws ... were enacted for the 'protection of competition, not competitors.' " Cargill, 479 U.S. at 110 (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962)).
 
 
 23
 Go-Video quotes broad language to us from many antitrust cases in which the government rather than a private party seeks an injunction. E.g., Brown Shoe Co. v. United States, 370 U.S. 294 (1962). Language from those cases is of no help in determining standing of a private antitrust plaintiff, because those courts were not evaluating that problem. While antitrust injunctions are intended to prevent anticompetitive conduct "in its incipiency," F.T.C. v. Proctor & Gamble Co., 386 U.S. 568, 577 (1967), still, a private litigant must have standing--the litigant must prove threatened loss or damage to its own interests to obtain relief. California v. American Stores Co., 495 U.S. 271, 296 (1990). The possibility of reduced profits to Go-Video because of greater competitiveness from Matsushita, as by offering "free" videotapes with its VCRs, or selling its VCR's in stores more convenient for consumers, would be a loss "due merely to increased competition," Cargill, 479 U.S. at 122, so it would not constitute antitrust injury. For the rest, we are unable to find in the complaint allegations which would establish the requirements of business or property in the affected market, antitrust injury, and alleged injury causally related to antitrust activity.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The complaint (1) contained no allegation that competition was actually restrained, Vernon v. Southern California Edison Co., 955 F.2d 1361, 1365 (9th Cir.1992); (2) failed to allege any fact that would establish that Matsushita engaged in anticompetitive conduct with a "dangerous probability of success," Spectrum Sports, Inc. v. McQuillan, 113 S.Ct. 884, 890-91 (1993), Image Technical Servs., Inc. v. Eastman Kodak Co., 903 F.2d 612, 619 (9th Cir.1990), aff'd, 112 S.Ct. 2072 (1992); and (3) failed to adequately allege specific intent to monopolize for purposes of its section 2 conspiracy to monopolize claim, Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1491 (9th Cir.1991)