**LOCAL BEAUTY SUPPLY, INC.,**
Plaintiff-Appellant,

v.

**LAMAUR INC., Defendant-Appellee.**

No. 85–1570.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1985.

Decided April 9, 1986.

Rehearing and Rehearing En Banc
Denied May 8, 1986.

Mark A. Welge, Frumkin & Manta, Philadelphia, Pa., for plaintiff-appellant.

Charles A. Mays, Leonard, Street & Deinard, Minneapolis, Minn., for defendant-appellee.

Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and GRANT, Senior District Judge.*

CUMMINGS, Chief Judge.

Plaintiff appeals from the summary judgment granted to defendant. The district court held that plaintiff lacked standing to bring this antitrust action against the defendant. We affirm on the ground that the plaintiff has failed to demonstrate an antitrust injury and therefore cannot obtain damages or an injunction.

## I. STATEMENT OF CASE AND FACTS

The defendant, Lamaur Inc., is a Minneapolis, Minnesota, manufacturer of beauty products. Lamaur has approximately 150 authorized distributors who sell the products as either full-service or cash-and-carry operations. Full-service dealers maintain field salespersons to advertise and sell the products to beauty salons. Cash-and-carry dealers typically sell the products through flyer advertising and sell primarily to small salons, retailers or unauthorized distributors. Lamaur prefers the full-service dealers because they provide more services to the clients and invest in advertising and active promotion of Lamaur's product. The plaintiff, Local Beauty Supply (Local), was a distributor of Lamaur products from 1956 to September 19, 1980, with its principal place of business in Castleton, Indiana. Over that time Local became more and more a cash-and-carry operation.

In 1973 Lamaur entered into a Lamaur distributor agreement (LDA) with its dealers. The agreement contained three pertinent provisions. First, the distributors agreed not to sell restricted-use products (such as permanent waves and bleaches) to non-salon customers without consent from Lamaur. Second, the agreement provided that distributors who failed to provide full service and advertising would remit to Lamaur 15% of the wholesale price as a functional discount. Third, the distributors agreed to submit to auditing by Lamaur in order to ensure compliance with the previous two provisions. If a distributor breached the agreement, Lamaur could cancel the LDA without prior notice. Local was a signatory to both the 1973 and 1977 LDA's.

Local contends that Lamaur used the audit and functional discount provisions of the LDA to facilitate a price maintenance scheme in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Local maintains that it was terminated by Lamaur in order to pacify distributors complaining of Local's subjobbing. As damages, Local seeks its lost profits from its inability to sell Lamaur products. Local argues that distributors in Chicago were complaining of its sales to Victory Bee (Bee), a retail discounter in Hillside, Illinois. Local alleges that in order to keep Bee from undercutting the distributors, Lamaur decided to stop selling to its supplier, Local. When Lamaur requested an audit of Local, Local refused, claiming the audits were a ruse, designed to intimidate Local (and other distributors) into stopping sales to Bee. Because Local would not submit to this audit, it was terminated. Thus, argues Local, its termination was the direct result of an unlawful price-fixing scheme. Local seeks treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15, and injunctive relief pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26.

Local filed a four-count complaint against Lamaur. Count I charged a violation of § 1 of the Sherman Act and sought ten million dollars in damages but trebled under § 4 of the Clayton Act; Count II alleged a post-termination boycott in violation of the same provision; Count III charged violations of §§ 2(d) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(d) and 13(e); and Count IV claimed injunctive

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

**1200**

or $50,000 per month monetary relief.[1] Counts I, III and IV were dismissed for lack of standing; Count II was dismissed by agreement of the parties to allow entry of final judgment. Local bases its appeal on Counts I and IV.

## II. ANTITRUST INJURY

The district court granted summary judgment to the defendant, holding that under the antitrust injury standards of *Associated General Contractors v. California St. Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723, *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149, and the Seventh Circuit test that requires a plaintiff to be within the statute's target area as established in *Lupia v. Stella D'Oro Biscuit Co.,* 586 F.2d 1163 (7th Cir.1978), certiorari denied, 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242, the plaintiff had no standing to bring the antitrust action. Although we agree that Local may not bring this action, we do so under the antitrust injury test set forth in *Brunswick v. Pueblo Bowl-O-Mat,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701, and followed in subsequent Supreme Court cases, including the most recent case of *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 1354, 1356, 89 L.Ed.2d 538 (1986).

### A. Summary Judgment

The district court judge granted summary judgment to defendant Lamaur on plaintiff's Sherman Act § 1 antitrust claim (Count I) and Clayton Act § 4 damage or Clayton Act § 16 injunctive claim (Count IV) on standing grounds. Therefore, we must assume for purposes of appeal that Local can prove an antitrust violation and decide only whether Local may proceed to present evidence. We of course take Local's allegations as true. *Lupia v. Stella D'Oro Biscuit Co.,* 586 F.2d 1163, 1167 (7th Cir.1978). First, Lamaur and its distributors had an agreement to maintain

retail prices; second, Lamaur attempted to enforce both the functional discount and audit provisions of its LDA to further the price-fixing scheme; and third, Lamaur's termination of Local was in furtherance of the illegal price maintenance. This is sufficient to make out an antitrust violation because otherwise lawful non-price mechanisms may be rendered *per se* unlawful if imposed as part of an illegal scheme to fix prices. *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775. But to obtain an injunction or recover damages under §§ 4 and 16 of the Clayton Act, plaintiffs must prove more than an antitrust violation; Local must also show that it was injured "by reason of the antitrust violation."

### B. The Clayton Act

Section 4 of the Clayton Act, 15 U.S.C. § 15, defines the class of persons who may maintain private damage actions under the antitrust laws. The statute reads very broadly, stating that "any person who shall be injured ... by reason of anything forbidden in the antitrust laws may sue...." However, the courts have not interpreted § 4 to be as expansive as its literal language suggests. In *Associated General,* 459 U.S. at 529–35, 103 S.Ct. at 903–07, the Supreme Court analyzed the § 4 language against its history, purpose, and case law. The Court first noted that traditional common-law tort concepts, such as proximate cause, directness of injury, certainty of damages, and privity of contract would constrain antitrust damages litigation. *Id.* at 532–33, 103 S.Ct. at 905–06; see *Loeb v. Eastman Kodak Co.,* 183 F. 704, 709 (3d Cir.1910). Thus the Court concluded that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Id.* 159 U.S. at 534, 103 S.Ct. at 906 (quoting *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184). Standing requirements have

---

1. Plaintiff failed to cite either § 16 or § 4 of the Clayton Act in Count IV of its complaint. But since it seeks treble damages and injunctive

relief for violations of the antitrust laws we may assume for purposes of appeal from summary judgment that it had done so.

been imposed because of the view that "the treble damages suit [is] too lethal a weapon to place in the hands of anyone who has suffered" an injury. *Lupia,* 586 F.2d at 1168. One of the more recent limitations placed on § 4 by the Supreme Court for monetary or equitable relief is the requirement of an antitrust injury. *Brunswick,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701.

### C. "Standing" Requirement

In *In re Industrial Gas Antitrust Litigation (Bichan),* 681 F.2d 514, 515 (7th Cir.1982), this Court noted that analysis of whether a plaintiff may bring a treble damages antitrust action against a defendant is two-fold. First, it is necessary to determine whether the plaintiff has suffered an antitrust injury and second whether the plaintiff is the proper party to bring the action. *Id.* at 515. Thus this Court specifically distinguished between the requirements of antitrust injury and a proper antitrust plaintiff. Whether a plaintiff is permitted to bring suit as a proper party necessitates the use of "standing" tests, such as the target area test. *Id.* at 516. But the *Bichan* Court then went on to analyze the antitrust injury prong under the target area test (*id.* at 517), a test more appropriate for determining when a plaintiff is too remote to be entitled to recover. Insofar as *Bichan* recognizes the concepts as analytically distinct, we adhere to this analysis.

The issue of antitrust standing has become somewhat confused. Some courts have considered "antitrust injury" as an additional element of standing, *e.g., John Lenore & Co. v. Olympia Brewing Co.,* 550 F.2d 495 (9th Cir.1977), while others have considered the two requirements as analytically distinct. *Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1500 (11th Cir.1985); *Bichan,* 681 F.2d at 515; *Industrial Inv. Dev. Corp. v. Mitsui & Co.,* 671 F.2d 876, 888 (5th Cir.1982); *Engine Specialties, Inc. v. Bombardier Ltd.,* 605 F.2d 1, 12 n. 16 (1st Cir.1979), certiorari denied, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839; *Pollock v. Citrus Assoc.,* 512

F.Supp. 711, 718 (S.D.N.Y.1981); Handler, *Changing Trends In Antitrust Doctrines: An Unprecedented Supreme Court Term —1977,* 77 Colum.L.Rev. 979, 997 (1977). The Supreme Court failed to clarify the issue in *Associated General* by incorporating a *Brunswick*-type analysis in its consideration of whether a plaintiff is a proper party. That case, however, dealt with remoteness and the Court was examining the general nature of the plaintiff's injury as a standing factor. In fact, the Court in *Associated General* noted only that collective bargaining agreements tended to lessen competition without specifically finding that the particular contract did, and thus concluded that unions were typically not the most effective and deserving plaintiffs. *Id.* 459 U.S. at 540, 103 S.Ct. at 909. Inasmuch as *Associated General* relies on *Brunswick* for support, we note its antitrust injury requirement is reaffirmed and therefore we rely on it as well.

### D. "Antitrust Injury" Requirement

In *Brunswick v. Pueblo Bowl-O-Mat Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701, the Supreme Court held that in order to maintain an antitrust action plaintiffs must be able to show more than an injury linked to a violation of the antitrust laws; they must prove an "antitrust injury." *Id.* at 489, 97 S.Ct. at 697. Antitrust injury is defined as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* Because the only asserted injury in this case is damages from the inability to continue profiting from the anticompetitive acts that comprise the antitrust violation, we hold that they are not recoverable under § 4 of the antitrust laws.

In *Brunswick,* the plaintiffs brought an action under § 7 of the Clayton Act complaining that the defendant Brunswick's acquisition of a rival bowling alley would tend to lessen competition because of Brunswick's "deep pocket." The damages claimed were lost profits that would have been made had the competitors been al-

lowed to go out of business. The Court found that what the plaintiffs were really complaining about was increased competition and their inability to profit from increased concentration of the market. *Id.* at 488, 97 S.Ct. at 1697. In so holding, the Court rejected the Ninth Circuit's ruling that any loss "causally linked" to "the mere presence of the violator in the market" was compensable. *Id.* at 487, 97 S.Ct. at 696 (quoting 523 F.2d at 272–73). The Court reasoned that to allow such recovery would separate antitrust recovery from the purposes of the antitrust laws. Because the plaintiffs had based their entire proof of injury on profits that would have been earned had the acquired centers closed, they were not entitled to recover. *Id.* at 490, 97 S.Ct. at 698; see also *Jack Walters & Sons Corp. v. Morton Building, Inc.,* 737 F.2d 698 (7th Cir.1984) (loss to plaintiff was a gain to consumers), certiorari denied, —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 359; *Car Carrier v. Ford,* 745 F.2d 1101 (7th Cir.1984) (acts complained of had pro-competitive effect), certiorari denied, —— U.S. ——, 105 S.Ct. 1758, 84 L.Ed.2d 821.

The Supreme Court recently reaffirmed the *Brunswick* requirement in *Associated General,* 459 U.S. at 540, 103 S.Ct. at 909. In *Associated General* two unions brought an antitrust suit against an association of building and construction contractors, alleging that it coerced third parties to enter into business relationships with non-union contractors. The Court analyzed the relationship between the nature of the plaintiffs' injury and the defendant's wrongdoing to determine whether the plaintiffs had standing to bring suit. *Id.* at 535, 103 S.Ct. at 907. Although *Associated General* is a case dealing with remoteness,

an issue we do not need to address here, the Court discussed *Brunswick* in its analysis of the nature of the plaintiffs' alleged injury. There the Court held that the unions had not shown a compensable antitrust violation, noting that collective bargaining agreements tended to lessen competition. *Id.* at 519–20, 103 S.Ct. at 899. The Court recognized that a *Brunswick*-type analysis was a factor in deciding the remoteness or directness of a particular plaintiff's injury. See *supra* at 1201.

■ The damages claimed by Local do not present the type of injury that the antitrust laws were intended to remedy. In its complaint, Local attempts to recover lost profits from sales of Lamaur products. Local claims that its termination was a result of Lamaur's desire to maintain prices and pacify local distributors because Local was undercutting the fixed prices. Local was admittedly sub-jobbing. Sub-jobbing is selling at low prices to discounters who then resell to the consumers. In this way Local could avoid additional costs of advertising and promotion and "free ride" off of the other full-service distributors' efforts.[2] Thus Local's market (discounters) and profits were a direct result of the maintained prices. Local was profiting from the antitrust violation itself.

As in *Brunswick,* the award of damages or an injunction here would be "inimical to the purpose of these [antitrust] laws." 429 U.S. at 488, 97 S.Ct. at 697. In *Brunswick,* the Court focused on competition, noting that plaintiff's damages were the result of greater competition. Therefore, the injury did not "flow from that which makes the defendants' acts unlawful." Here, though the damages do not reflect lessened competition, they represent Local's inability to

---

**2.** The validity and legality of manufacturers' prevention of free riding by requiring payments or advertising and accounting of sales in territories has been settled by the Supreme Court in *Monsanto,* 465 U.S. at 762–63, 104 S.Ct. at 1470, and *Continental T.V., Inc. v. GTE Sylvania,* 433 U.S. 36, 55, 97 S.Ct. 2549, 2560, 53 L.Ed.2d 568. Here, the district court noted in its ruling that the evidence before it failed to demonstrate a "conscious commitment to a common scheme designed to achieve an unlawful objective," as

required by *Monsanto.* App. 318–319; see also *Business Electronics Corp. v. Sharp Electronics Corp.,* 780 F.2d 1212 (5th Cir.1986) (there must be explicit or implicit price maintenance agreement before distributor termination is illegal *per se*). However, because this case is at the summary judgment stage, we do not reach the merits of the antitrust violation, but rather assume that the plaintiffs could show a scheme of price maintenance to violate the antitrust laws. See *supra* at 1200.

continue to profit from the anticompetitive nature of the violation. Because Local's interests are disserved by enhanced competition (it loses its discounting market), its injury is not the type the antitrust laws were intended to prevent.

Several decisions addressing this issue support our decision. In *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir.1978), certiorari denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486, this Court addressed the issue of whether *Brunswick* forbade Ohio from recovering its profits. In the *Ohio-Sealy* case, Ohio alleged that Sealy had engaged in antitrust conduct by exercising its right of first refusal to purchase licensees. Ohio argued that the reason Sealy exercised that right was to keep Ohio from competing intrabrand outside its "area of primary responsibility" (APR). The Court upheld the award of damages to Ohio; but in so doing it noted that to the extent the damages reflected profits made because of its enjoyment of the antitrust violation, *e.g.,* profits from reduced intrabrand competition within its own APR or profits made from intrabrand competition in neighboring APR's, they were not appropriate for compensation as an antitrust injury. *Id.* at 833. To the extent that Ohio's profits resulted from its success as an interbrand competitor due to the quality and efficiency of Ohio's production (amply demonstrated in the record, see *id.* at 832), they did reflect a *Brunswick* injury. *Id.* The Court went on to hold that the combination of these "good" and "bad" damages met the *Brunswick* test for all damages "so long as they involve anticompetitive conduct aimed at the plaintiff."[3]

 Similarly, in *W. Goebel Porzellanfabrik v. Action Industries (Goebel)*, 589 F.Supp. 763 (S.D.N.Y.1984), a defendant counterclaimed against plaintiff's copyright suit alleging that the suit was part of an antitrust violation to limit the quantity of Hummel figures imported into the United States. The district court held that Action had not demonstrated an antitrust injury under a *Brunswick* analysis because:

> Indeed, [Action] may actually have been benefited by Goebel's allegedly restrictive trade practices. Assuming that all of the facts in [Action's] counterclaim are true, the prices of Hummel figures were artificially inflated to the point where it was possible for [Action] to purchase the figures in Europe, ship them to the United States and ... still undersell Goebel distributors and make a profit.
>
> Thus, in the absence of the complained practices, [Action] would never have had the financial attraction to import Hummel figures.

*Id.* at 766. Thus the Southern District of New York Court recognized the same rule that we do here, *viz.*: damages based on profits made by a plaintiff because of the existence of an antitrust violation are not recoverable. In *Goebel,* as here, the plaintiffs' market and profits were attributable to the violation of which they complained. This does not fit with the purpose of the antitrust laws which is to "limit the availability of § 4 relief only to those individuals whose protection is the fundamental purpose of the antitrust laws." *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 125 (9th Cir.1973), certiorari denied *sub nom. Morgan v. Automobile Mfg. Ass'n,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336. Like these cases, we hold that lost profits from the inability to continue to take advantage of inflated prices due to antitrust conduct are not representative of antitrust injuries recoverable under § 4 of the Clayton Act. Thus Local has failed to demonstrate antitrust injury as required by *Brunswick* for damages. See *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 106 S.Ct. 1348, 1354, 1355–56, 89 L.Ed.2d 538 (1986).

---

**3.** Ohio also claimed as damages $170,000 in "pass-over payments" made to Sealy in furtherance of the antitrust violation. We need not address the correctness of the holding that the mix of damages was sufficient to meet the *Brunswick* test because here the plaintiff has failed to show any compensable antitrust injury.

**1204**

*E. Injunctive Relief*

Plaintiff also seeks injunctive relief, requesting that the distributorship agreement be declared a violation of the antitrust laws and that Lamaur be enjoined from carrying out its price-fixing conspiracy. See *supra* note 1. Section 16 of the Clayton Act, 15 U.S.C. § 26, provides for private equitable relief. The issue we must address is whether the *Brunswick* antitrust injury requirement applies to § 16 of the Clayton Act.

The standing requirements for § 16 relief have been considered less stringent than for § 4 relief, because § 16 is viewed as a more adaptable tool for enforcing the antitrust laws. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 260–61, 92 S.Ct. 885, 890, 31 L.Ed.2d 184; *Weiss v. York Hosp.*, 745 F.2d 786, 806 (3d Cir.1984); *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044 (9th Cir.1979); *Yoder Bros., Inc. v. California-Florida Plant Corp.*, 537 F.2d 1347 (5th Cir.1976), certiorari denied, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540. In fact, the Ninth Circuit has held the target area standing test irrelevant for standing analysis under § 16. *Parks v. Watson*, 716 F.2d 646, 662 (9th Cir.1983); see also *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir.1979).

However, very few courts have addressed § 16 in light of *Brunswick*. Despite the broader application of standing requirements under § 16, there is reason for extending the "antitrust injury" requirement of *Brunswick* to § 16 claims. In *Brunswick* the Supreme Court found the need for antitrust injury in the § 4 language requiring injury "by reason of anything forbidden in the antitrust laws." 429 U.S. at 485, 97 S.Ct. at 696. Similarly, § 16 allows injunctive relief for "threatened loss or damage *by a violation of the antitrust laws.*" The Third, Eighth and our own Circuits have expressly incorporated the antitrust injury requirement to the proximate cause element of § 16. *Shoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205, 211 (3d Cir.1980). The court recognized that to allow a lower standing threshold for injunctive relief does not grant carte blanche to those plaintiffs with only incidental injury, and thus requires plaintiffs to demonstrate antitrust injury under § 16 of the Clayton Act. *Id.* at 210–211; see also *Tim W. Koerner & Assocs. v. Aspen Labs, Inc.*, 492 F.Supp. 294, 301 (S.D.Tex.1980) ("the [*Brunswick*] analysis of proximate cause under § 4 * * is also applicable to § 16"). Another reason given for applying the antitrust injury rule under § 16 is because injunctions may injure consumers just as surely as damages may. *Midwest Communications, Inc. v. Minnesota Twins, Inc.*, 779 F.2d 444, 452–453 (8th Cir.1985).

 We agree with the above decisions of the Third and Eighth Circuits. A plaintiff seeking equitable relief under § 16 of the Clayton Act should be no less representative of the interests of the antitrust "victims" than those seeking damages under § 4. See *Shoenkopf*, 637 F.2d at 210. Accordingly, to bring a claim for injunctive relief under § 16 of the Clayton Act a plaintiff must demonstrate an antitrust injury. *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.*, 784 F.2d 1325, 1334 (7th Cir.1986). Because Local has not met this burden and indeed would be helped by Lamaur's high prices, it may not proceed in its suit against Lamaur. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1354, 1355–56, 89 L.Ed.2d 538 (1986).

III. CONCLUSION

For the reasons discussed above, we affirm the summary judgment granted to defendant Lamaur by the district court.