**RETURN ON INVESTMENT SYSTEMS, Plaintiff,**

v.

**TRANSLOGIC CORPORATION, Defendant.**

**No. 87 C 9967.**

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1988.

---

Paul E. Slater, Jerry M. Santangelo, Gregg R. Hague, Sperling, Slater & Spitz, Chicago, Ill., for plaintiff.

David Roston, Paul Petit, Peter Lubin, Brad Grayson, Altheimer & Gray, Chicago, Ill., Bruce L. Montgomery, Melvin C. Garbow, Helene B. Madonick, Arnold & Porter, Washington, D.C., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is defendant's motion to dismiss for failure to state a claim for which relief can be granted. *See* Fed.R. Civ.P. 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## FACTS

The facts, construed in favor of the plaintiff/non-movant, are as follows. Defendant, TransLogic Corporation ("TransLogic"), is a manufacturer (in the "manufacturing market") and installer (in the "installation market") of pneumatic tube and con-

veyor systems ("the product"). On or about December 30, 1986, defendant acquired its largest competitor in the manufacturing market, Lamson Corporation ("Lamson"). Following the acquisition, defendant had and has maintained a market share in the manufacturing market of approximately 80%.

Prior to defendant's acquisition of Lamson, plaintiff Return on Investment Systems ("ROI") was an authorized installer of Lamson pneumatic tube and conveyor systems. Subsequent to defendant's acquisition of Lamson, defendant has refused to sell any pneumatic tube and conveyor systems to ROI or any other independent installer of such equipment, choosing to do that work itself.

Plaintiff brings a five count complaint. Counts I and II allege TransLogic's acquisition of Lamson violates Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act. *See* 15 U.S.C. §§ 1, 2, 18. Count III is a leveraging claim. It alleges TransLogic used its monopoly power in the manufacturing market (derived from the acquisition of Lamson) in an attempt to monopolize the installation market, in violation of Section 2 of the Sherman Act. Count IV alleges TransLogic breached two contracts with ROI, and Count V alleges TransLogic committed various acts of unfair competition.

## DISCUSSION

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condomin-*

*ium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986). With this standard in mind, the court will address the sufficiency of each of plaintiff's five claims.

■ Defendant argues that plaintiff does not have standing under Counts I and II to challenge the acquisition of Lamson. Counts I and II allege the acquisition of Lamson violated antitrust law because it gave Translogic monopoly power in the manufacturing market. Counts I and II also each contain an allegation that Translogic used that power to injure competition in the installation market. However, this latter allegation is essentially contained in Count III, which will be addressed subsequently. Therefore, the court will focus its analysis of Counts I and II on the issue of whether plaintiff has standing to challenge the acquisition of Lamson on the grounds that the acquisition gave TransLogic monopoly power in the manufacturing market.

To have standing to bring an antitrust suit, a plaintiff must properly allege antitrust injury. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 488–89, 93 L.Ed.2d 427 (1986). In addition, the plaintiff must be a proper party for other reasons. *Id.* 107 S.Ct. at 489 n. 5. What makes one a "proper party" is a nebulous question. Three tests have become popular: the "target area" test, the "zone of interest" test, and the "direct injury" test. *See Brown v. Visa U.S.A., Inc.*, 674 F.Supp. 249, 253 (N.D.Ill.1987). The Seventh Circuit has primarily utilized the target area test. *Id.* at 253–54. However, the Supreme Court has expressed dissatisfaction with these tests. *See Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 537 n. 33, 103 S.Ct. 897, 908 n. 33, 74 L.Ed.2d 723 (1983); *Southwest Suburban Board of Realtors v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1377 n. 1 (7th

Cir., 1987). Consequently, the Seventh Circuit in *Southwest Suburban Board,* stated that "courts should focus on the antitrust injury requirement, analyzing the nature and directness of the injury alleged, and the other factors set out in [*Associated General* ]." *Id., citing Associated General,* 459 U.S. at 537 n. 33, 103 S.Ct. at 908 n. 33.

These factors have been summarized by this court. *See Brown,* 674 F.Supp. at 254. They are as follows:

1) whether the defendant intended to cause harm to the plaintiff;

2) whether the plaintiff is a consumer or competitor in the relevant market;

3) whether the plaintiff's injury was a direct result of the antitrust violation;

4) whether the injury alleged is speculative;

5) whether there is a risk of duplicative recoveries if a particular plaintiff's suit is allowed to proceed; and

6) whether an award of damages among several plaintiffs will give rise to complex issues of apportionment of damages.

*Id., citing Associated General,* 459 U.S. at 537–45, 103 S.Ct. at 908–12. Applying these factors to TransLogic's acquisition of Lamson, the court finds that ROI does not have standing to challenge that acquisition. The court relies primarily on the second and third factors.

Plaintiff is not a consumer or competitor in the relevant market. The relevant market regarding the acquisition of Lamson is the manufacturing market; the acquisition was a horizontal one between two companies in the manufacturing market. Plaintiff does not claim to be a competitor in that market. Plaintiff argues that it is a consumer in that market in that it purchases the manufactured product. Yet plaintiff is not a consumer of the manufactured product, because it resells (and installs) the product; ROI is a link in the distribution chain. The final purchaser, in this case those to whom ROI sells the product, is the true consumer.

Furthermore, plaintiff's injury was not a direct result of the acquisition of Lamson. Rather, the injury was indirect. To illustrate this fact, the court notes that TransLogic could have acquired Lamson and kept ROI as the installer of the Lamson portion of Translogic. In that scenario, ROI would not have been injured by the acquisition. Thus, it was not the acquisition, but the use of the power derived from that acquisition in a particular manner, which injured ROI. Plaintiff does have standing to challenge the use of that power, as it does in Count III, but does not have standing to challenge the acquisition itself.

The fifth and sixth factors are also relevant here. Regarding those factors, the Court in *Associated General* gave the example of the difficulty in trying to apportion damages among direct purchasers, middlemen, and ultimate consumers. *Associated General,* 459 U.S. at 544, 103 S.Ct. at 911. Likewise, in this case, the apportionment and duplication problems would be significant if competitors in the manufacturing market, suppliers, installers, and consumers all had standing to challenge the acquisition. For all these reasons, the court finds that ROI lacks standing to challenge the acquisition of Lamson, and dismisses Counts I and II.

■ Count III is a leveraging claim. It alleges that TransLogic used its monopoly power in the manufacturing market, derived from its acquisition of Lamson, in an attempt to monopolize the installation market. Defendants argue that Count III should be dismissed because ROI does not allege that TransLogic has market power in the installation market. Defendants argue that to state a claim for an unlawful attempt to monopolize by leveraging, a plaintiff must allege that the defendant *has* market power in both the market being used to acquire monopoly power in the target market *and* in the target market. Yet, one who has market power is essentially one who has succeeded, at least partially, in achieving a monopoly. Thus, defendant is arguing that to state a claim for *attempted* monopolization, a plaintiff must allege that the defendant has already suc-

ceeded, at least in part. In support of this claim, defendant cites two cases involving allegations of "tying": *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 671, 674 (7th Cir.1985); and *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 210 (7th Cir.1985). Yet neither of these cases stands for such a proposition. Rather, each states that a plaintiff must allege a danger that the defendant *will acquire* market power in the target market. This is exactly what plaintiff's complaint alleges. Neither case suggests that to plead that a danger exists that a defendant will acquire market power, a plaintiff must plead that defendant already has market power. Thus, defendant's motion to dismiss Count III is denied.

Count IV alleges TransLogic breached two contracts Lamson made with ROI. TransLogic argues that Count IV should be dismissed because it fails to allege any contract between ROI and TransLogic. Yet, in many circumstances, an acquiror of another corporation assumes the acquired corporation's obligations. *See, e.g., Panther Pumps and Equipment Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 24–25 (7th Cir.1977), *cert. denied sub nom., Beck v. Morrison Pump Co., Inc.*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). One such circumstance is where "the purchasing corporation is merely a continuation of the selling corporation." *Id.* A generous reading of the complaint finds an allegation that TransLogic is a continuation of Lamson, and is thus responsible for Lamson's contractual obligations. Therefore, the motion to dismiss Count IV is denied.

Count V alleges the tort of unfair competition. Defendant argues plaintiff fails to state a claim because it alleges neither intentional, wrongful and malicious interference with ROI's business relations nor breach of any duty owed to ROI. Yet the complaint alleges all these elements. It alleges TransLogic committed unlawful acts, including antitrust violations and breaches of contracts, to prevent ROI from competing with it. All the elements necessary to state a claim under Count V may reasonably be inferred from a generous reading of these allegations.

In sum, the motion to dismiss Counts I & II is granted. The motion to dismiss Counts III, IV and V is denied.

IT IS SO ORDERED.